UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRAVIS DRISKILL,

    Plaintiff,

    v.

EXPERIAN INFORMATION SOLUTIONS, INC., et al.,

    Defendants.

Case No. 24-cv-00583-AMO

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION FOR DISCOVERY**

Re: Dkt. Nos. 37, 42

This is a Fair Credit Reporting Act ("FRCA") case. Before the Court are Defendant Experian Information Solutions, Inc.'s ("Experian") motion to compel arbitration and Plaintiff Travis Driskill's motion for discovery regarding Experian's motion to compel arbitration. The matters are fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for August 29, 2024, was vacated. *See* ECF 60; Civ. L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Experian's motion to compel arbitration and **DENIES** Driskill's motion for discovery.

**I.    BACKGROUND**

In February 2022, Driskill obtained his credit file disclosure from Defendant Experian, which "contained eleven Affirm accounts that Experian was wrongfully reporting as belonging" as a purported result of identity theft. Compl. ¶¶ 33-35, 47.[1] Driskill disputed the reporting to

---

[1] When evaluating a motion to compel arbitration, courts apply a standard similar to a motion for summary judgment, construing all facts and reasonable inferences in a light most favorable to the non-moving party. *See Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Experian, and in response, Experian deleted most of the accounts from his credit. Compl. ¶¶ 38-39. Experian did not delete two Affirm accounts, which form the substance of Driskill's ongoing credit-reporting plight. *Id.*

Driskill reports that he first became aware of these issues on February 16, 2022, when he received a notification email from Experian and he then clicked through a series of links to access his credit information. Driskill Decl. (ECF 41-1) ¶¶ 3-7. When Driskill obtained his credit file disclosure, he enrolled in CreditWorks, a service provided by Experian affiliate ECS, and he agreed to the CreditWorks Terms of Use. Smith Decl. (ECF 37-2) ¶ 3. The online form he completed required Driskill to enter his personal information – i.e., his name, address, phone number, and e-mail address. *Id.* After he entered his personal information, Driskill had to click the "Create Your Account" button on the webform in order to enroll. *Id.* Immediately below the boxes to enter his e-mail address and password, was the following disclosure: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." *Id.*

The phrase "Terms of Use Agreement" in the disclosure was a hyperlink off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. Smith Decl. ¶ 4. Thus, before clicking the "Create Your Account" button, the consumer could view the entire text of the Terms of Use by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." *Id.* When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. *Id.* Immediately below the disclosure was a large purple button that reads: "Create Your Account." *Id.* The webform, the disclosure, and the "Create Your Account" button appeared on a single webpage. *Id.* Experian presents the following representation of the webpage as it would have appeared at the time Driskill saw it:

[Screenshot of Experian "Tell Us About Yourself" / "Create Your Account" enrollment page, including fields for name, address, email, password, and a purple "Create Your Account" button, with sidebar listing benefits and security badges.]

Smith Decl. Ex 1 (ECF 37-2 at 7).

After entering his information, Driskill clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use Agreement. Smith Decl. ¶ 5. Driskill would not have been able to successfully enroll in CreditWorks unless he clicked that button. Id.

Every version of the Terms of Use that was in effect during Driskill's enrollment in CreditWorks contained an arbitration agreement that requires him to litigate, among other things, all claims against "ECS" that "relate to" or "arise out of" his ECS membership. Smith Decl. ¶ 6. The Arbitration Agreement expressly defines "ECS" to include its "affiliates," including "Experian Information Solutions, Inc." Id. ¶ 6, Ex. 3.

On February 16, 2022, Driskill received an email credit alert from Experian and clicked a link to Experian's website, where he then input his personal information and set up an account.

3

Driskill Decl. (ECF 41-1) ¶¶ 3-6. Driskill denies that he ever saw or understood the arbitration agreement, and he asserts that he never consented to contract away his FCRA rights. Driskill Decl. ¶¶ 12-15.

## II. DISCUSSION

Experian moves to compel arbitration. ECF 37 ("Mot."). Driskill opposes on the basis that there exists a factual dispute regarding his assent to the CreditWorks agreement and the arbitration provision contained therein. ECF 41 ("Opp."). Driskill additionally moves to obtain discovery regarding his and other consumers' consent to the CreditWorks agreement. ECF 42. The Court addresses the motion to compel arbitration first because its analysis clarifies that no further discovery is required.

### A. Motion to Compel Arbitration

#### 1. Legal Standard

The Federal Arbitration Act ("FAA") provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). The FAA reflects a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Despite this strong policy favoring arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

A court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v.*

4

*KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (internal citation omitted).  If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal citations omitted).  When evaluating whether a party is bound by an arbitration agreement, federal courts "'apply ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

### 2. Analysis

Because it is foundational, the Court begins by analyzing Driskill's challenge to the existence of a contract.  First it considers Driskill's legal challenge to the contract and then takes up whether his factual challenge to contract formation precludes finding mutual assent.  Finally, the Court considers Driskill's assertion that Experian cannot enforce the arbitration agreement because it is not a signatory.

#### a. Existence of Agreement to Arbitrate

Driskill argues that he did not agree to the arbitration provision contained in the CreditWorks Terms of Use when he followed Experian links and created an online account and, therefore, the required element of mutual assent is missing.

"[M]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)).  Parties may manifest assent through their conduct, "[h]owever, [t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citation omitted).  The "principle of knowing consent" required to establish contract formation "applies with particular force to provisions for arbitration" (*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014)), and with equal force to contracts formed online (*Berman*, 30 F.4th at 855-56).

5

Historically, courts viewed contracts formed on the Internet as either " 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use" or " 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175-76. But now, online agreements are viewed as falling on a spectrum between "clickwrap" and "browsewrap." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Courts routinely find agreements falling closer to the clickwrap end of the spectrum to be enforceable because the consumer has received notice of the terms being offered and "knows or has reason to know that the other party may infer from his conduct that he assents" to those terms. *Id.* Courts are "more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Id.* In a sign-in wrap, or a "modified clickwrap agreement," a user is "notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." *Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *4-5 (N.D. Cal. July 25, 2023) (finding that a modified clickwrap agreement demonstrated mutual assent to arbitrate).

Here, Driskill received the following disclosure in bolded text immediately above the "Create Your Account" button when creating his account: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement . . ." Smith Decl., Ex. 1 (ECF 37-2 at 7). The phrase "Terms of Use Agreement" in the disclosure was a blue hyperlink that, if clicked, would have presented Driskill with the full text of the Terms of Use Agreement, including the arbitration agreement. Smith Decl. ¶¶ 3-4, Ex. 1. Further, the "Terms of Use Agreement" hyperlink is "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023). The notice is conspicuously displayed directly above the "Create Your Account" button and is in regular sized, bold font. Smith Decl., Ex. 1. The language "By clicking 'Create Your Account': I

accept and agree to your Terms of Use Agreement" makes clear that the user's action constitutes a manifestation of an intent to be bound.

In this way, the Terms of Use Agreement is "somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else – click ["Create Your Account"] – to assent to the hyperlinked terms." *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *5 (N.D. Cal. Feb. 24, 2017) (citation omitted). The Terms of Use Agreement is thus most like a "modified clickwrap agreement" or "sign-in wrap" because the CreditWorks sign up screen informs users that if they click a button (the "Sign Up" button), they agree to the Terms of Use.

The CreditWorks sign up screen effectively notified Driskill of the existence of the Terms of Use and advised that creation of an account constituted acceptance of those Terms. CreditWorks conspicuously provided the Terms of Use adjacent to the "Create Your Account" button, included a hyperlink to the terms in a contrasting color, and informed the user that "Create Your Account" would indicate assent to the terms. Based on these features, the Court concludes that the website design provides constructive notice of the Terms of Use, including the arbitration provision. *See DeVries*, 2017 WL 733096, at *6 (finding that EIS's website design provided constructive notice where "[t]he text containing the Terms and Conditions hyperlink was located directly above that button and indicated that clicking 'Submit Secure Purchase' constituted acceptance of those terms").

Having found that the CreditWorks sign up screen gave conspicuous notice of the Terms of Use, the analysis turns to whether Driskill unambiguously manifested assent to the hyperlinked Terms of Use. *Oberstein*, 60 F.4th at 517. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858. Here, the CreditWorks sign up screen makes the assent-manifesting actions – creating an account and acceptance of the Terms of Use – clear, and

7

1  clicking the "Create Your Account" button is the way to complete that action. Driskill does not
2  refute this issue. Accordingly, there is no reasonable dispute that Driskill assented to the Terms of
3  Use.
4        Driskill does not otherwise contest the formation of an agreement through acceptance of
5  the Terms of Use nor the more specific acceptance of the agreement to arbitrate contained therein.
6  In light of Driskill's limited legal attack on the existence of an agreement to arbitrate and having
7  concluded that Driskill assented to the Terms of Use, the Court concludes that an agreement to
8  arbitrate exists.

### b. Driskill's Factual Challenge

10  Driskill focuses much of his opposition on what he views as a material dispute of fact
11  regarding formation of the agreement to arbitrate.
12        In resolving a motion to compel arbitration, "[t]he summary judgment standard [of Federal
13  Rule of Civil Procedure 56] is appropriate because the district court's order compelling arbitration
14  'is in effect a summary disposition of the issue of whether or not there had been a meeting of the
15  minds on the agreement to arbitrate.'" *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th
16  Cir. 2021) (citation omitted). This means that the party seeking to compel arbitration, as under the
17  summary judgment standard, bears the initial burden of informing the court of the basis for its
18  motion, and of identifying those portions of the pleadings and discovery responses that
19  demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.
20  317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v.
21  Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there
22  is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*
23        Here, Driskill factually disputes the formation of the agreement to arbitrate. He contends,
24  in essence, that he did not see the Terms of Use hyperlink and he did not know he was entering
25  into an agreement with ECS at the time that he clicked through to create an account and access his
26  consumer credit information from Experian. *See* Driskill Decl. ¶¶ 5-9. He reasons that his failing
27  to see the arbitration clause creates a factual dispute regarding his assent. However, Driskill's
28  declaration falls short of creating a genuine dispute of material fact. Indeed, Driskill's declaration

8

is not even inconsistent with the evidence presented by Experian. Smith declares that ECS's records reveal Driskill signed up for a CreditWorks account on February 16, 2022. Smith Decl. ¶ 3. Driskill acknowledges that he accessed an Experian website and "followed the instructions to create an account" on February 16, 2022. Driskill Decl. ¶¶ 3-6. Though Driskill states that he did not recognize that the creation of an account meant that he entered into a contractual relationship with Experian (or its affiliates), this does not create a genuine dispute of fact. *Voll v. HCL Techs. Ltd.*, No. 18-CV-04943-LHK, 2019 WL 144863, at *5 (N.D. Cal. Jan. 9, 2019) (compelling dispute to arbitration because plaintiff's lack of memory regarding his receipt of the arbitration agreement did not directly contradict defendant's evidence of assent).

There are at least two more reasons why Driskill's factual challenge fails. First, Driskill's uncorroborated declaration regarding what he saw on the website falls short of creating a genuine dispute of fact. *See, e.g.*, *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1061 (9th Cir. 2002) (refusing to find a genuine issue where the only evidence presented is uncorroborated and self-serving testimony.); *FTC v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Second, Driskill's claim that he did not see any language that he was entering into a contract with Experian does not create a genuine dispute because no reasonable jury would consider the declaration sufficient evidence to overcome the copy of the webform he completed. *See* Smith Decl. Ex. 1; *Anderson*, 477 U.S. at 248. The webpage, as discussed above, clearly provided the Terms of Use adjacent to the "Create Your Account" button, included a hyperlink to the terms in a contrasting color, and informed the user that clicking "Create Your Account" would indicate assent to the terms. Smith Decl. Ex. 1. Driskill's declaration that he did not recognize that he was entering into a contract at the time of his account creation simply cannot create a genuine dispute of material fact on the issue of his assent to the Terms of Use or the arbitration contained therein.

                **c.**        **Experian's Enforcement of Arbitration Agreement**

Beyond Driskill's protest that he never entered into a contract with ECS, a substantial part of Driskill's opposition to the motion to compel arbitration centers on whether Experian can

1  enforce the arbitration agreement because Experian is merely an affiliate of ECS, not a party to the
2  Terms of Use. However, whether Experian can enforce the arbitration agreement in the
3  CreditWorks Terms of Use has already been resolved in this Circuit. In *Meeks v. Experian Info.*
4  *Servs., Inc.*, No. 21-17023, 2022 WL 17958634 (9th Cir. Dec. 27, 2022), "Experian [sought] to
5  enforce an arbitration provision in a larger agreement that the plaintiffs entered into when they
6  signed up for credit-monitoring services provided primarily by Experian's sister company,
7  Experian Consumer Services." *Id.* at *1. The Ninth Circuit concluded that the text of the
8  arbitration provision in the Terms of Use required the parties "to arbitrate certain disputes and
9  defines ECS to include affiliates," even though "the larger agreement does not define ECS to
10 include affiliates." *Id.* The *Meeks* court held that Experian was a party to the arbitration
11 provision, which appears to be the same Terms of Use that is contested here, because Experian is
12 defined as an affiliate of ECS in the arbitration agreement. *Id.* at *2 (remanding the case to the
13 district court with instructions to grant Experian's motion to compel arbitration). Indeed, this
14 follows earlier Ninth Circuit reasoning that parties defined as "affiliates" in an arbitration
15 agreement may enforce the agreement as a party. *See Ridgeway v. Nabors Completion & Prod.*
16 *Servs. Co.*, 725 Fed. App'x. 472, 475 (9th Cir. 2018). The agreement that Experian seeks to
17 enforce here appears to be the same as the one at issue in *Meeks*. Driskill's argument that the FAA
18 is inapplicable because Experian is not a party to the arbitration agreement fails to persuade, much
19 less overcome this authority.
20       Driskill finally contends that Experian cannot enforce the arbitration agreement, and that
21 the FAA does not apply, because his claims do not arise from the Terms of Use. *See* Opp. at 8-9
22 (ECF 41 at 14-15). In so doing, Driskill fails to grapple with *Meeks* at all and instead sticks his
23 head in the sand, pointing to AAA arbitration decisions and inapplicable concurrences. *See, e.g.*,
24 Opp. at 9 (citing, e.g., Sept. 18, 2022 Order Regarding Arbitrability, *Morgan v. Experian Info.*
25 *Sols., Inc.*, AAA Case No. 01-22-0001-0857); Opp. at 8 (citing *Revitch v. DIRECTV, LLC*, 977
26 F.3d 713, 721 (9th Cir. 2020) (O'Scannlain, J., concurring)). The three AAA arbitration decisions
27 proffered by Driskill are easily dismissed as unhelpful: they have no precedential value and they
28 considered different versions of the arbitration agreement. *See* Ex. 2 (ECF 41-2). Further, *Revitch*

1   is unhelpful here. That case assessed whether claims against DirecTV – an "affiliate" of the entity
2   (AT&T) with whom plaintiff contracted for wireless services – could be compelled to arbitration
3   given the fact that (1) DirecTV did not become an affiliate of AT&T until seven years after
4   Plaintiff had contracted with AT&T, and (2) the services that plaintiff received from DirecTV had
5   nothing whatsoever to do with plaintiff's agreement with AT&T. *Revitch*, 977 F.3d at 721
6   (finding no agreement to arbitrate between the plaintiff and DirecTV). Experian's affiliation with
7   ECS, in contrast to the affiliation between DirecTV and AT&T, existed prior to Driskill's assent to
8   the arbitration agreement in the Terms of Use. Judge O'Scannlain's concurrence does not alter the
9   inapplicability of *Revitch* here because the concurrence discussed the scope of that arbitration
10  agreement – the issue of scope is not relevant here because this arbitration agreement delegates
11  questions of scope to the arbitrator. *See Revitch*, 977 F.3d at 721; Smith Decl. Ex. 1 (ECF 37-2 at
12  15).
13          Further, Driskill relies heavily on *Austin v. Equifax Info. Servs., LLC*, No. 3:22CV707,
14  2023 WL 8646275 (E.D. Va. Dec. 14, 2023). In *Austin*, a FCRA plaintiff challenged the evidence
15  in support of a similar motion to compel arbitration to the one at issue here. *Id.* The court granted
16  the plaintiff's motion for discovery on the issue of mutual assent to the arbitration agreement, the
17  same relief Driskill seeks in his now-pending motion, because the plaintiff expressly challenged
18  the corporate declarant's personal knowledge regarding the online sign up process. *Id.* at *2. In
19  the subsequent analysis, the district court disregarded the corporate representative's declaration
20  based on the declarant's lack of personal knowledge regarding the CreditWorks sign-in process.
21  *Id.* at *2. The district court found that the plaintiff's declaration that he did not agree to the
22  CreditWorks Terms of Use sufficiently rebutted the corporate declarant's description of the
23  clickwrap to preclude a finding of mutual assent to arbitrate. *Id.* at *3-4 (finding lack of mutual
24  assent after having granted plaintiff's request for discovery on the issue of mutual assent).
25  However, Driskill does not challenge the Smith Declaration, and he has presented no evidence that
26  Smith lacks personal knowledge of how the CreditWorks online account sign-up functioned.
27  Driskill argues in part that there exist disputed facts, including regarding "Experian's complete
28  lack of any admissible evidence establishing Plaintiff's agreement to the terms proffered in Mr.

11

1  Smith's Declaration." Opp. at 15 (ECF 41 at 21). Because Driskill does not directly challenge the
2  admissibility of the corporate declaration, he has provided no basis to disregard it. Moreover,
3  *Austin* is irreconcilable with *Meeks* and every other case in this Circuit that has evaluated the
4  enrollment process into CreditWorks. *See, e.g.*, *Saucedo v. Experian Info. Sols., Inc.*, No. 1:22-
5  CV-01584-ADA-HBK, 2023 WL 4708015, at *8 (E.D. Cal. July 24, 2023) (de Alba, J.).

6  Because Driskill entered into the larger Terms of Use Agreement when he signed up for
7  credit monitoring services through CreditWorks, and because Experian is expressly included as a
8  party to the arbitration provision included in the Terms of Use, the Court is obliged to compel the
9  claims against Experian to arbitration. The Court accordingly **GRANTS** Experian's motion.

### B.  Motion for Discovery

Driskill moves for arbitration discovery, stating in part that "[m]ultiple key issues remain disputed as to the purported agreement to arbitrate, including: Experian's complete lack of any admissible evidence establishing Plaintiff's agreement to the terms proffered in Mr. Smith's Declaration; the lack of mutual assent to arbitration and lack of any meeting of the minds on the idea that Experian's arbitration language encompasses the claims in this case; and if there even was such a connected [*sic*] between the Parties, the defense of fraudulent inducement." Mot. at 14 (ECF 42-1 at 21). Driskill also states that he intends to retain two experts. The first he says will be an "expert in deception in digital products," who will "opine as to the subterfuge inherent in the CreditWorks signup process, the likelihood of consumer confusion during that process, and the comprehensibility of the information provided to consumers to purportedly obtain their mutual assent to a mandatory, pre-dispute arbitration clause." Mot. at 15 (ECF 42-1 at 22). For the second expert, Driskill intends to hire an expert to "perform a study of other consumers Experian contends were bound by the same website text to determine what these other consumers understood." Mot. at 16 (ECF 42-1 at 23).

The FAA permits the Court to order limited discovery to resolve whether a contract exists "only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4). Here, Driskill's requested additional discovery would provide no new information

helpful to the Court in analyzing his assent to the arbitration agreement. *Meeks* provides clear guidance regarding the enforceability of the Terms of Use by Experian to compel arbitration. Driskill advances no alternative challenge to contract formation. This is insufficient to warrant discovery. *See Ghazizadeh v. Coursera, Inc.*, No. 23-CV-05646-EJD, 2024 WL 3455255, at *15 (N.D. Cal. June 20, 2024) (denying motion for discovery where the evidence sought would not alter the court's analysis of arbitration contract formation). The making of the arbitration agreement is not at issue. Therefore, the Court **DENIES** the request for discovery.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Experian's motion to compel arbitration and **DENIES** Driskill's motion for discovery. The Court **STAYS** Driskill's claims against Experian pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

Driskill and Defendant Affirm, Inc., shall meet and confer to discuss whether the arbitration stay extends to Driskill's claims against Affirm such that the entire case should remain stayed. Within 21 days from the date of this order, Driskill and Affirm **SHALL** file either a stipulation to stay the action in full or a joint letter brief, not to exceed five (5) pages, laying out the parties' respective positions regarding the scope of Experian's arbitration stay.

**IT IS SO ORDERED.**

Dated: October 8, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**